UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23527-Civ-MORENO
MAGISTRATE JUDGE P. A. WHITE

NANCI RIVERO,                        :

       Petitioner,                 :

v.                                   :        REPORT OF
                                              MAGISTRATE JUDGE
WALTER A. McNEIL,                    :

       Respondent.                 :
_____

Introduction

    Nanci Rivero has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of her conviction for the first degree murder of Alberto Lopez entered following a jury verdict in Miami-Dade County Circuit Court, case no. F01-005673.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this amended petition (DE#6), the Court has the response of the state with multiple exhibits (DE#s10,12,15).

    The petitioner raises the following 8 claims:

        1.   The trial court erred in limiting the introduction of the petitioner's post-arrest statement. (DE#6:6).

        2.   The trial court erred in denying the petitioner's requested special jury

instructions. (DE#6:7A).

3.    The petitioner was denied a fair trial
      based on the prosecution's prosecutorial
      misconduct during closing argument.
      (DE#6:9).

4.    The trial court erred in denying the
      petitioner's motion for mistrial and to
      strike the jury panel after sustaining
      all of the defense objections regarding
      the prosecution's attempt to quantify
      premeditation. (DE#6:10).

5.    The court erred in failing to permit the
      petitioner to introduce favorable
      evidence at trial. (DE#6:11).

6.    The petitioner was denied effective
      assistance of counsel, where her lawyer
      failed to explore other defenses and
      interview or call crucial defense
      witnesses to support the petitioner's
      theory of defense. (DE#6:13,13A).

7.    The petitioner was denied effective
      assistance of counsel, where her lawyer
      failed to conduct adequate pretrial
      investigation and conceded the
      petitioner's guilt at trial. (DE#6:14).

8.    The court erred in failing to ascertain
      the petitioner's desire to testify on her
      own behalf and call witnesses. (DE#6:16).


                    Procedural History


     The procedural history of the underlying state court

conviction reveals as follows. On March 12, 2001, the petitioner

was charged by Information with the second degree murder of Alberto

Lopez. (DE#15:Ex.A). On March 14, 2001, an Indictment was returned

charging her with the first degree murder of Alberto Lopez.

(DE#15:Ex.B). The petitioner proceeded to trial where she was found

guilty as charged, and further found that she had discharged a

                              2

firearm causing death or great bodily harm. (DE#15:Ex.D). She was adjudicated guilty and sentenced to life in prison, without the eligibility for parole. (DE#15:Ex.D).

The petitioner appealed, raising essentially the same claims as claims one through three of this federal petition, as listed above. (DE#15:Ex.E). On December 28, 2005, the Third District Court of Appeal *per curiam* affirmed the petitioner's conviction and sentence. <u>Rivero v. State</u>, 917 So.2d 990 (Fla. 3 DCA 2005). Thus, the judgment of conviction became final, for purposes of the federal AEDPA's one year statute of limitations, at the latest on March 28, 2006, ninety days following the affirmance of the conviction and sentence on direct appeal.[1]

The AEDPA's one-year limitations period ran unchecked from March 28, 2006 until December 20, 2006, when the petitioner returned to the state court filing her first motion for postconviction relief pursuant to <u>Fed.R.Cr.P.</u> 3.850, raising essentially the same claims raised in this habeas petition as listed above. (DE#15:Ex.H). Following an evidentiary hearing, an order was entered by the trial court barring claims one through five on the basis that they could have been, but were not raised on direct appeal, and denying as belied by the record claims six through eight. (DE#15:Exs.I-J). That denial was subsequently *per curiam* affirmed by the Third District Court of Appeal without written opinion. <u>Rivero v. State</u>, 998 So.2d 618 (Fla. 3 DCA 2008)(table); (DE#15:Ex.M). Rehearing was denied on December 19,

---

[1]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>Bond v. Moore</u>, 309 F.3d 770 (11 Cir. 2002); <u>Coates v. Byrd</u>, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

2008. (DE#15:Ex.N). The mandate issued on January 6, 2009.[2]

Prior to the mandate issuing on the above appeal, the petitioner then came to this court timely filing this federal habeas corpus petition on December 31, 2008.[3] (DE#1). The petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v.

---

[2]See http://199.242.69.70/pls/ds/ds_docket.

[3]See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

<u>Reese</u>, 541 U.S. 27 (2004); <u>Gray v. Netherlands</u>, 518 U.S. 152 (1996); <u>Duncan v. Henry</u>, 513 U.S. 364 (1995); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).

The respondent argues in its response to the order to show cause that the petitioner is not entitled to review on the merits of certain claims that are unexhausted, See 28 U.S.C. §2254(b)(1) and (b)(1)(A),[4] and prospectively procedurally barred from federal habeas corpus review. While it appears that some of the claims raised in this federal petition may not have been technically exhausted before the state courts,[5] subjecting them to a procedural bar,[6] this Court need not reach this difficult question in this particular case. Since the petitioner cannot prevail on the merits of her claims, there is no need to belabor the procedural issues here.[7]

---

[4]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert. denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979). Claims of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal. <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990).

[5]Claim two appears to have been raised in the state court as a claim of state court error, rather than as a federal constitutional violation.

[6]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

[7]Even if certain claims are technically unexhausted, this Court will exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See <u>Johnson v. Scully</u>, 967 F.Supp. 113 (S.D.N.Y.

While this Court acknowledges that the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated. See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8 Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8 Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.") In this case, judicial economy dictates that the petitioner's claims be addressed on the merits.

### Facts Adduced At Trial

For an appreciation of the plethora of issues raised in this habeas proceeding, a full review of the facts adduced at trial is essential. Mercedes Vidal testified that she met the victim at her old job at Econo Caribe Consolidated, and knew him for five years prior to the incident. They started dating in June 2000 and in late September 2000, the victim moved to Hialeah. Vidal was aware that the victim had an ex-girlfriend, the petitioner, Nanci Rivero. (T.315-18).

Sometime in late December 2000, the petitioner began calling Vidal, telling her that she was the victim's fiancee, was pregnant, and needed to speak with him. She further requested that Vidal step away so that she could reconcile with the victim. (T.318-19). Eventually, Vidal broke up with the victim for about a week in

1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

December, but reconciled with him on New Year's Eve. (T.320). The petitioner again contacted Vidal, telling her she had bought a gun, but didn't know what she was going to do with it. (T.322-23).

On the evening of the murder, the victim and Vidal were together at the victim's apartment, cooking and cleaning. (T.323-325,328-29). During that time, the petitioner called several times, eventually speaking with the victim. (Id.). Thereafter, the victim was accompanying Vidal to her car when the petitioner confronted him at the foot of the stairs, lifted her arm, and without speaking, immediately started shooting him. The first and third shots hit the victim in the torso area, while another hit his right arm. (T.329-332). The victim collapsed, lying on his back on the stairs. (T.334-35).

After the victim was shot, Vidal ran upstairs, locked the apartment door, and as she called 911, she continued to hear more shots being fired. (T.336). Vidal later identified the petitioner from a photographic line-up on the same night of the shooting. (T.344-49).

Detective Lionel Garcia with the Hialeah Police Department, testified that he arrived at the scene and collected evidence therefrom. (T.411-413). He identified four casings and spent projectiles located at the scene, and stated he also recovered a live .38 bullet. According to Detective Garcia, the shooter used a revolver which required the physical removal of the spent casings from the cylinder, some of which were later recovered from the floor. (T.418-29,436).

Off-duty Trooper John Baker with the Florida Highway Patrol testified that he was working on a road construction detail on the day of the shooting, when he heard a horn beeping, and observed a

7

car with a female occupant stopped on the roadway. (T.437-38). The occupant of the car was directed to drive off the traffic lanes into the construction area. At that time, the female, visibly upset, stated she had just killed her boyfriend, and was on her cellular phone with a Metro-Dade County 911 operator. At that time, the petitioner was then placed into custody, her car sealed and towed. Trooper Baker observed a black revolver on the passenger side of the car. (T.439-44).

Thereafter, a search warrant was obtained to search the petitioner's vehicle, at which time a Taurus .38 caliber revolver with rubber grips, several bullets, the revolver's bill of sale, as well as a purse, wallet, organizer, and other documents were seized therefrom. Additionally, two or three live rounds of ammunition were found inside the petitioner's purse, and two on one of the car seats. (T.458-61;471-73,475-76). Inside the gun were also three live bullets and two spent casings.

Isabel Rodriguez, the apartment manager where the victim lived and was killed, testified that the petitioner had also rented an apartment in January, but did not finish out the month of February. (T.499-500).

Dr. Reinhardt Motte, the medical examiner, testified that the victim was shot five times, with hollow-point bullets that expand when they strike flesh, thereby creating a maximum wounding potential. (T.533-36,542,550-51). Dr. Motte described each of the wounds, one to the face, right forearm, chest area and thorax, stomach area, thigh, and back. (T.542,550-51,553-64). The fatal shot, however, was the one to the thorax which resulted in injuries to the spleen, lung, heart, and esophagus. (T561-62). The shot to the back produced damage and bleeding around the spinal cord, which incapacitated the victim, making him unable to use his legs.

(T.562-63).

From the location of the wounds, it appears the victim was able to get up, walk down and stagger towards the parking lot, attempting to flee the shooter. The shooter, however, shot the victim in the back, incapacitating him, and then took another shot at the thorax. Once the victim was down, the petitioner then shot him one more time in the face. (T.566-67).

## Discussion of the Claims

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11 Cir. 2007). See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11 Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

A federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008); Parker v. Sec. Dept. of Corrections, 331 F.3d at 768. Consequently, a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States;
or (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. §2254(d). The statutory phrase "clearly established
Federal law" "refers to the holdings, as opposed to the dicta, of
[the U.S. Supreme] Court's decisions as of the time of the relevant
state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120
S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)(majority opinion by
O'Connor, J.).

      "[A] state court's decision is not 'contrary to ... clearly
established Federal law' simply because the court did not cite
[Supreme Court] opinions.... [A] state court need not even be aware
of [Supreme Court] precedents, 'so long as neither the reasoning
nor the result of the state-court decision contradicts them.'"
Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v.
Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an
application for post-conviction relief without written opinion,
that decision constitutes an "adjudication on the merits," and is
thus entitled to the same deference as if the state court had
entered written findings to support its decision. See Wright v.
Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002).
Moreover, findings of fact by the state court are presumed correct,
and the petitioner bears the burden of rebutting that presumption
of correctness by clear and convincing evidence. See 28 U.S.C.
§2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Crowe
v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, ___ U.S.
___, 128 S.Ct. 2053 (2008); Henderson v. Campbell, 353 F.3d 880,
889-90 (11th Cir. 2003).

      As will be demonstrated in more detail infra, the petitioner

is not entitled to vacatur on any of the claims presented.[8] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally trial and due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Regarding the ineffective assistance of counsel claims raised herein, in  order to prevail as to those claims, the petitioner must establish: (1) deficient performance - that her counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc).

---

[8]Briefly, as narrated in this Report, the evidence against the petitioner was more than sufficient to support her conviction. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to Strickland has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the petitioner received a fair trial, and that no constitutional violations occurred. Consequently, she has failed to demonstrate that she is entitled to habeas corpus relief in this collateral proceeding.

The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd, ___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim one**, the petitioner asserts that the trial court

erred in limiting the introduction of the petitioner's post-arrest statement. (DE#6:6). Instead, the petitioner maintains that her entire post-arrest statements should have been admitted under Florida's "rule of completeness," Fla.Stat. §90.108.[9] (Id.:6a; DE#15:Ex.E-Initial Brief on Appeal). The petitioner claims her inculpatory statements about her relationship with the victim and her wanting to die was essential so that the jury could have a clear picture and understanding of the events culminating in the victim's murder. (Id.).

First, it is well settled that federal habeas review is not available to correct state law evidentiary errors; it is limited to violations of constitutional rights. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for habeas relief. Id at 72. Regardless, the claim fails on the merits.

At trial, prior to voir dire, the court and both defense counsel and the prosecution argued the issue of whether or not the petitioner's confession should be admitted in its entirety, or whether it should be redacted. (T.17-24,293,298). Essentially, the prosecutor argued that portions of the statement which were not inculpatory should not be admitted, while defense counsel contended that the complete statement should be admitted because it went to the petitioner's state of mind.

After reviewing the statements and applicable case law, the court found in pertinent part as follows:

---

[9]When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously. Fla.R.Evid. 90.108; accord, Fed.R.Evid. 106.

...it is obvious that a statement against
penal interest and [sic] out of court
statement made by a declarant which is against
the declarant's penal interest is admissible
if the declarant is unavailable. Relying on
the case of *Francis*, it is obvious that
unavailability includes the exercise by a
defendant of his or her right against self-
incrimination and based on that Ms. Rivero may
very well be unavailable should she chose
[sic] not to testify in this case. If, in
fact, she is unavailable the authority
indicates that her statement against penal
interest would be admissible. Relying on the
cases of *United States versus* Seyfried, 435
F.2d 696, *United States versus Marquez*, 462
F.2d 893, *Brooks versus State*, [sic] So.2d
765, *Smith v. State*, 746 So.2d 1162. It is
obvious that only portions which are clearly
against penal interest would be admissible and
the statement would be need [sic] to be
severed and/or redacted....

Having reviewed the transcript I will allow
the Defense to introduce the following
portions...The rest of the statement will be
excluded.

(T.292-95).

Defense counsel objected to that ruling, arguing that the
entire statement should be admitted. (T.298). However, independent
review of the record reveals that the prosecution did not introduce
the petitioner's post-arrest statement she provided to the
detective into evidence. (T.391-99).

The law is clear that the rule of completeness is an
evidentiary rule, not a rule of constitutional law. See Howard v.
Moore, 131 F.3d 399, 415 (4 Cir. 1997). Moreover, neither the
federal or Florida rules of completeness compel admission of
otherwise inadmissible hearsay evidence. United States v. Quansah,
supra; Evans v. State, 808 So.2d 92, 104 (Fla. 2001)(concluding

14

that the rule of completeness did not entitle the defendant to elicit a detective's hearsay testimony on cross-examination when the jury was not misled or confused by the detective's direct examination testimony and the detective did not testify about a specific witness's partial statement that required further clarification).

On the record before this court, there is no reasonable probability that had the alleged statements been admitted the outcome of the trial would have been different. See generally Wellington v. Moore, 314 F.3d 1256, 1260-61 (11 Cir. 2002)(holding that where there is no reasonable probability that the alibi testimony would have changed the outcome of the trial, given the strength of the evidence admitted at trial, the trial court's application of Strickland's prejudice prong in postconviction proceeding was not objectively unreasonable).

Moreover, contrary to the petitioner's assertion here, the jury was not left without a complete picture of the events surrounding the killing of the petitioner's ex-boyfriend Lopez. In fact, the defense was able to introduce through cross-examination that the petitioner was cooperative during the investigation, and further argued during closing that the petitioner was suicidal and that the murder was not premeditated, but rather, a crime of passion. (T.632,646-48). In Florida, evidence is relevant if it tends to prove or disprove a material fact. Fla.Stat. §90.401 (2000). Unless otherwise provided by law, "[a]ll relevant evidence is admissible" at trial. Fla.Stat. §90.402 (2000). In this case, statements by the petitioner that she wanted to die and background information regarding her relationship with the victim were irrelevant to prove or disprove a material fact in this case.

Accordingly, for all of the foregoing reasons, the trial court

did not err in failing to admit the petitioner's unredacted statement. The affirmance of that denial on direct appeal was neither contrary to nor an unreasonable application of Williams v. Taylor, supra and therefore should not be disturbed here.

Regardless, even if the court erred in failing to admit the redacted testimony, such error at best was harmless, given the overwhelming evidence adduced at trial to support the petitioner's conviction, which included testimony that the petitioner made several phone calls to the victim's girlfriend prior to the murder, requesting that she "step aside," and at one point even threatening her. (T.318-23). Moreover, the evidence at trial also confirmed that the victim was shot five times, but seven spent projectiles were recovered from the scene. (T.531-32,551-64). An expert testified that the firearm used had to be manually reloaded, therefore, the jury was free to conclude that the petitioner reloaded the gun and continued firing at the victim, thereby supporting the prosecution's theory of premeditation. Thus, the state court's rejection of the claim should not be disturbed here.

In **claim two**, the petitioner asserts that the trial court erred in denying the petitioner's requested special jury instructions on the petitioner's heat of passion defense. (DE#6:7A).

Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992).

More pertinent to this case, a theory of defense jury

instruction must be given when the requested instruction 1) is correct, 2) is not substantially covered by the court's charge to the jury, and 3) deals with some point in the trial so important that failure to give the requested instruction would seriously impair the defendant's ability to conduct his defense. Stephens v. State, 787 So.2d 747, 756 (Fla. 2001); United States v. Vicaria, 12 F.3d 195, 198 (11 Cir. 1994), citing, United States v. Camejo, 929 F.2d 610, 614 (11 Cir. 1991). While a defendant is entitled to jury instructions that present the crux of his defense, there is no entitlement to tailor-made instructions that pinpoint certain aspects of the defense, and the decision whether to give special jury instructions lies within the discretion of the judge. See Harris v. Hamlet, 79 Fed.Appx. 252, 253 (9 Cir. 2003).

Thus, a court's failure to give an appropriate theory-of-defense jury instruction, without more, is not a violation of the due process clause. Some other circumstances, demonstrating a serious miscarriage of justice, must also be present. Hill v. United States, 368 U.S. 424 (1962)(the error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."). No such showing has been made here.

In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard jury instructions accurately and adequately state the relevant law. See Moody v. State, 359 So.2d 557 (Fla. 4 DCA 1978). While a defendant is entitled to have the jury instructed on his theory of defense, such an instruction is not warranted where the standard instructions given adequately address the relevant law. See Palmes v. State, 397 So.2d 648 (Fla. 1981).

17

In this case, the petitioner claims there was evidence that the petitioner acted out of passion, based on her long-time, romantic relationship with the victim, and constant documented harassment from the victim after the relationship was dissolved. (DE#6:7a). However, the standard instruction on premeditation given in this case has been upheld by Florida courts. See Kilgore v. State, 688 So.2d 895, 897-98 (Fla. 1996)(standard jury instruction were sufficient to explain premeditation and therefore court did not err in denying special heat-of-passion instruction which could have been confusing); see also, Kramer v. State, 619 So.2d 274 (Fla. 1993).

Based upon the evidence admitted at trial, the petitioner was clearly not entitled to the subject special instruction. Independent review of the record reveals there was sufficient evidence adduced at trial to support the finding of premeditation, which included veiled threats to the victim's girlfriend, the number of shots fired at the victim, the type of bullets used, and the fact that the petitioner had to reload the firearm after she fired five shots. (T.322-323,533). See Perry v. State,[10] 801 So.2d 78, 84 (Fla. 2001)(citations omitted). Here, there has been no demonstration of a federal constitutional error. See California v. Roy, 519 U.S. 2,5 (1996), citing, Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Kotteakos v. United States, 328 U.S. 750, 776 (1946). Accordingly, the state court's rejection of the claim on direct appeal should stand and relief must therefore be denied pursuant to 28 U.S.C. §2254(d); Williams v. Taylor, supra.

In **claim three**, the petitioner asserts she was denied a fair

---

[10]In Perry, the Florida Supreme Court held that evidence of premeditation may be inferred from "such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Perry v. State, 801 So.2d at 84.

trial based on the prosecution's prosecutorial misconduct during closing argument. (DE#6:9).

During the defense's closing argument, defense counsel argued in pertinent part, as follows:

> Landlady said the apartment was rented in February to someone else. So, she [petitioner] left some time between the 27th and the 1st of February. Now, if Alberto didn't know where she lived, why would she have to leave, she paid for two months. If it wasn't over for her with Alberto [victim], there was no reason to leave. She left because it was over. She already said to Mercedes you can have him. I don't want to stand in the way of both of you. So, she didn't have to leave if he didn't know where she lived. She could have stayed there until the end of February, so he know where she lived.

(T.597).

The petitioner claims that the prosecution rebuttal argument, as follows, was highly prejudicial:

> You heard, she knew about it. She knew that he loved her. She even heard on Valentine's Day that things were going great with them. And she was not going to accept the simple fact that he was done with her. They want to believe that she dumped Alberto Lopez. **Come on there's not a scintilla of evidence in this case that reflects that Nanci Rivero was done with him.**

(T.599-600)(emphasis added). The defense then objected on the basis that it was an improper comment, but the objection was overruled by the court. (Id.).

Next, in the state forum, the petitioner argued that the following prosecutorial comments[11] during closing here improper:

---

[11]Moreover, to the extent the petitioner means to argue that the prosecution's argument that "you cannot kill somebody in the United States for cheating on you or taking up with another person, that is against the law," and "[M]ost people have had their heart broken and it doesn't give you a license to kill" because we live in a "civilized society," was highly prejudicial and

19

> She literally took matters into her own hands. She
> executed the ultimate revenge in this case. That is what
> Nanci Rivero did.
>
> You heard this same story, ladies and gentlemen a
> million times in your lives.
>
> An individual scorn [sic] who decides to do something
> lethal, deadly about it, and what's [sic] what she did.

(T.600-601).

The defense objected, arguing that the prosecution was commenting on matters outside the scope of the evidence, was irrelevant, and not a factor in the deliberations. (Id.). Additionally, the defense argued that the prosecution was trying to imply the petitioner was responsible for other crimes. (Id.). The defense's objections, however, were ultimately overruled by the court. (T.601).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. den'd, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reason- able probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v.

---

improper also fails. Defense counsel's objection that this was sending an improper message to the community was overruled by the court. (T.603). Here, while the argument was inartful, the prosecution did not attempt to have the jury put themselves in the shoes of the victim. Regardless, even if the above comments were unlawful, they did not affect the fundamental fairness of the trial. Moreover, the jury was instructed that arguments by the attorneys is not evidence in the case. It is presumed they followed the court's instruction in this regard. Thus, the petitioner cannot prevail on this argument.

Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. den'd, 485 U.S. 964 (1988).

Comments on the failure of the defendant to testify are clearly improper. See Bertolotti v. Dugger, 883 F.2d 1503, 1524 (11 Cir.), cert. denied, 497 U.S. 1032 (1990). While the prosecutor's remarks in the instant case may possibly not be a model for prosecutorial comment, they cannot be construed as an improper comment on the petitioner's silence. It does not appear that the statement was manifestly intended or were of such a character that a jury would naturally and necessarily take it to be an improper comment on the failure of the petitioner to testify. See Bertolotti v. Dugger, 883 F.2d at 1524. Moreover, the remark was appropriate rebuttal to defense counsel's arguments during closing.

The prosecutor's remarks as noted above were essentially fair comment on the evidence presented in the case and the comments were in direct response to the strategy employed by the defense. Argument intended to rehabilitate a state witness whose credibility was attacked by defense counsel has been held proper. See United States v. Cano, 289 F.3d 1354, 1366 (11 Cir. 2002), cert. denied, 540 U.S. 985 (2003)(citing United States v. Delgado, 56 F.3d 1357, 1368 (11 Cir.1995), cert. denied, 516 U.S. 1049 (1996).

Further, in this case, the trial court at the start of the trial and again immediately before closing argument clearly and correctly instructed the jury that what the lawyers said was not evidence in the case and should not be considered as such (T.591), and that the case must be decided only upon the evidence presented at trial. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Moreover, under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt,

it is apparent that the now-challenged actions of the prosecutor and statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). The petitioner suffered no prejudice from the alleged deficiency in that she was not deprived of a fundamentally fair trial as a result of the challenged actions and comments.[12] See Harris v. Moore, 1999 WL 223167, *4 (M.D.Fla. 1999); Ford v. State, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial). Therefore, the petitioner is not entitled to habeas relief on this ground. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In **claim four**, the petitioner asserts that the trial court erred in denying the petitioner's motion for mistrial and to strike the jury panel after sustaining all of the defense objections regarding the prosecution's attempt to quantify premeditation. (DE#6:10).

The respondent here asserts correctly that this claim is procedurally barred, because the state courts in the postconviction proceedings applied a procedural bar.[13] This claim was raised in the

---

[12]The long-standing standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974). See also Davis v. Zant, 36 F.3d 1538, 1545 (11 Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974)).

[13]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim

Rule 3.850 proceeding and denied by the trial court on the specific
finding that it was not cognizable in a Rule 3.850 motion as it
could have and should have been raised on direct appeal.
(DE#15:Ex.J). That denial was *per curiam* affirmed by the Third
District Court of Appeal without written opinion. <u>Rivero v. State</u>,
998 So.2d 618 (Fla. 3 DCA 2008)(table); (DE#15:Ex.M).

It is well established in Florida that claims that could have,
and should have, been raised on direct appeal are procedurally
barred from collateral review. The failure of a federal habeas
petitioner to adhere to state procedural rules governing the proper
presentation of claims will bar federal review of those claims in
a subsequent federal habeas corpus proceeding. <u>See</u> <u>Wainwright v.
Sykes</u>, 433 U.S. 72 (1977); <u>Sims v. Singletary</u>, 155 F.3d 1297, 1311
(11 Cir. 1998). The federal habeas court must defer to the state
court's interpretation of its procedural rules, and must enforce
those rules as well as enforcing the procedural rulings of the
state courts. <u>See</u> <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11 Cir. 1989).
<u>See also</u> <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11 Cir.1997)(holding
that "state courts are the final arbiters of state law, and federal
habeas courts should not second-guess them on such matters.").

Finally, this Court cannot presume that a Florida court
ignores its own procedural rules when the court issues only a one-
sentence denial of relief. Such a ruling does not suggest that the
state court resolved the issue on the federal claim presented. <u>See</u>
<u>Coleman v. Thompson</u>, 501 U.S. 722, 735-36, 111 S.Ct. 2546, 115
L.Ed.2d 640 (1991); <u>Kight v. Singletary</u>, 50 F.3d 1539, 1544-1545
(11 Cir. 1995)(applying procedural bar where state court's summary
dismissal did not explain basis for ruling); <u>Tower v. Phillips</u>, 7

---

would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299,
1302-03 (11 Cir. 1999).

F.3d 206, 209 (11 Cir. 1993)(applying bar where state court did not rule on claims presented).

"[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal quotation marks omitted). The federal court must apply a procedural bar to the claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, Harris v. Reed, 489 U.S. 255 (1989), or are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).

Because the state court correctly applied procedural default principles of state law to arrive at the conclusion that the claim was barred, this court must respect the trial and appellate court decisions. In other words, the claim as listed above is now barred from review here because it has been expressly barred in the state forum, see Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999), unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999); see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). No such showing has been made here.

In **claim five,** the petitioner asserts that the court erred in failing to permit the petitioner to introduce favorable evidence at trial. (DE#6:11).

Like claim four above, this claim was also denied by the trial

court on the specific finding that it could and should have been raised on direct appeal. (DE#15:Ex.J). Therefore, for the reasons previously expressed in relation to claim four above, this claim is barred from review in this habeas proceeding. No showing has been made here to circumvent the bar. Thus, no prejudice will inure to the petitioner from this court's failure to address the merits of the claim.

In **claim six**, the petitioner asserts that she was denied effective assistance of counsel, where her lawyer failed to conduct adequate research, fully investigate the case, explore all possible defenses, and interview or call crucial defense witnesses[14] to support the petitioner's theory of defense. (DE#6:13,13A).

<u>Failure to Investigate, Research, and Explore Possible Defenses</u>

First, the petitioner argued in the state forum that counsel's trial strategy was contrary to the strategy she had agreed to pursue. She claims counsel failed to obtain her consent prior to changing strategies. In support thereof, she maintains she was unaware that counsel had filed a motion in limine to preclude the state from eliciting at trial that Sgt. Taylor attempted to advise the petitioner of her constitutional rights during his interrogation, but ceased because it appeared that she could not comprehend them. In the motion, counsel argued that Sgt. Taylor's testimony was inadmissible hearsay and otherwise highly

---

[14]To the extent she claims Florida Highway Patrol Trooper John Baker should have been called as a defense witness to testify at trial, the claim warrants no relief. As will be recalled, Trooper Baker testified at trial and was cross-examined by the defense regarding the fact that on the day of the shooting, he observed the petitioner in her vehicle, beeping the car horn. (T.437-38). He directed her to a construction site, at which time he observed the petitioner was visibly upset, and was on the phone with 911, advising that she had just killed her boyfriend. (T.439-444). Consequently, this claim is refuted by the record and warrants no relief here. The petitioner thus cannot establish prejudice arising from counsel's failure to call this witness during the defense case.

25

prejudicial. The petitioner maintains that she wanted Sgt. Taylor to testify on her behalf because his testimony would have supported her heat of passion defense. As discussed more fully *infra*, no showing has been made that calling this witness and presenting such a defense would have succeeded. To the contrary, the evidence at trial clearly establishes that the petitioner planned and executed the killing of the victim.

At the Rule 3.850 hearing, defense counsel testified that he was fully prepared for trial, including investigating the petitioner's prior mental health history and having her evaluated by two different mental health doctors, who determined that pursuit of an insanity defense was not viable. (DE#15:Ex.I:147-155).

Independent review of the record reveals that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, moved for judgment of acquittal, and presented a forceful closing argument. Under these circumstances, no showing has been made that counsel's alleged deficiencies as proffered by the petitioner are meritorious and/or otherwise warrant vacatur of her conviction because she was prejudiced therefrom. Consequently, the state court rejection of the claim should not be disturbed here. Williams v. Taylor, supra.

## Failure to Call Defense Witnesses

Although not specified herein, in the Rule 3.850 proceeding, the petitioner asserts that that counsel was ineffective for failing to call Corporal Taylor with the Florida Highway Patrol,

26

Calyton Dos Santos, J'Eduardo Rivero, Roberta da Cruz, Ana Gabriela
Rodriguez, Allessandra Goncalvez de Sousa, and Tama Lisa as defense
witnesses at trial. The petitioner has only attached affidavits[15]
from J'Eduardo Rivero, Sr. and Ana Gabriela Ramirez regarding their
proposed testimonies. (DE#15:Ex.H-Exhibit B-C:Affidavits).

Specifically, J'Eduardo, the petitioner's ex-husband, avers
that in July 2000, while in Brazil, he was present when the victim
visited the petitioner, and was constantly arguing with her,
insisting that the petitioner return to the United States with him.
J'Eduardo claims that during this time period, the petitioner was
prescribed sedatives to control her stress level which resulted in
a miscarriage. J'Eduardo testified that the petitioner eventually
acquiesced, agreeing to return with the victim to the United
States. He further recalled receiving a call from the petitioner in
February 2001, at which time the petitioner was threatening to kill
herself. He advised her to calm down and seek psychiatric
counseling. A week later, however, he learned the petitioner had
been arrested and accused of murdering Alberto Lopez, the
petitioner's ex-boyfriend.

Ramirez indicates that on Thanksgiving day in 2000, she was
sitting next to her "dear friend," the petitioner, and her son,
when the petitioner's phone rang. Her son advised the petitioner
that the victim Lopez was calling. Ramirez stated that she
overheard the petitioner telling Lopez that she would not leave the

---

[15]Post-trial, self-serving affidavits, such as the ones relied upon by the
petitioner, are viewed with extreme suspicion.  See Drew v. Scott, 28 F.3d 460,
462-63 (5 Cir.), cert. denied, 512 U.S. 1266 (1994).  See also May v. Collins,
955 F.2d 299, 314 (5 Cir. 1992) and cases cited therein, cert. denied, 504 U.S.
901 (1992)(when faced with recanting affidavits, trial court may make credibility
choice in favor of trial testimony without taking additional live testimony).

The proffered statements as contained in those affidavits, when viewed in
light of the evidence adduced at trial, would not have affected the outcome of
this criminal proceeding.

party she was attending in order to accompany him to his house. Ramirez recalled the petitioner seemed sad and tearful. Likewise, Ramirez stated that he was witness to occasions when Lopez would contact the petitioner to harass her. According to the petitioner, the testimony of both Rivero and Ramirez was crucial to establish that she was unstable, suffering from depression, and thus incapable of planning a heinous murder.

Moreover, the petitioner claims counsel had indicated that he was going to be bringing Clayson dos Santos and Roberta Cruz from Brazil to testify that they had witnessed the victim beat the petitioner in 2000. (DE#15:Ex.17-).

At the Rule 3.850 evidentiary hearing, defense counsel testified that he never intended to contact Corporal Taylor as a defense witness. (DE#15:Ex.I:141). To the contrary, he filed a motion in limine seeking to prevent the prosecution from presenting such testimony. (Id.:140-41). According to defense counsel, Corporal Taylor assisted Trooper Baker in arresting the petitioner, and advising her of her Miranda[16] rights, including the right to remain silent, which she ultimately invoked. (Id.). In counsel's opinion, calling Corporal Taylor would have caused the jury to disbelieve the defense's theory that the petitioner went to the victim's apartment to kill herself, believing instead that she calculated and intelligent enough to invoke her constitutional rights. (Id.:142-43).

Regarding Roberta Da Cruz, counsel testified he was unaware of this defense witness. (Id.:146). However, he did recall interviewing Dos Santos regarding the abuse the victim inflicted on the petitioner. (Id.). Counsel explained that this witness was not

---

[16]Miranda v. Arizona, 384 U.S. 436 (1966).

called to testify because the court had previously granted the prosecution's motion in limine which precluded the defense from presenting evidence of the petitioner's prior abuse. (<u>Id</u>.:146). Moreover, counsel further testified that strategically, he felt the jury could have interpreted this testimony against the petitioner, believing that the petitioner killed the victim in revenge for past injuries. (<u>Id</u>.:147).

Counsel explained he was also precluded from calling Rivero as a defense witness based on the same ruling. (<u>Id</u>.:159). Regardless, counsel opined that introducing testimony regarding the victim's harassing calls may have also been viewed by the jury as a motive for killing the victim. (<u>Id</u>.:168). Finally, counsel also explained he did not call Ramirez to testify, because her testimony, like the other witnesses, could have been perceived by the jury as a motive for the petitioner to kill the victim. (<u>Id</u>.:168-69). Moreover, counsel stated that mental anguish was not a defense to murder, but could be used as a mitigating factor at sentencing.

Based on the foregoing testimony and the record as a whole, the petitioner's argument in this habeas proceeding that counsel was ineffective for failing to call these witnesses to support a heat of passion defense must fail. Aside from the fact, as discussed above, that the evidence was ample to support a conviction of premeditated first degree murder, a "heat of passion" defense in Florida is available only if the defendant can show that his act of killing was engendered by sufficient provocation. "[T]he provocation upon which he acts must be reasonable and sufficient, and such as would ordinarily and naturally excite a man to violent anger, and cause him to lose control of his passion." <u>Olds v. State</u>, 44 Fla. 452, 33 So. 296 (1902). Even if it were true that the victim harassed the petitioner, trying to force her to return to him, such an action would not have been so egregious as to

"ordinarily and naturally excite a man [woman] to violent anger," to the point where she would shoot him multiple times.

Second, the "heat of passion" defense is applicable only where the evidence shows that the defendant acted in a moment of rage, without time to cool off or reflect on her behavior, such that the element of premeditation is negated. Lusk v. State, 498 So.2d 902 (Fla. 1987); compare, Tien Wang v. State, 426 So.2d 1004 (Fla. 3 DCA), rev.denied, 434 So.2d 889 (Fla. 1983). Premeditation can be deduced from factual circumstances such as the manner of the killing and the nature and kind of wounds inflicted, Welty v. State, 402 So.2d 1159 (Fla. 1981); Larry v. State, 104 So.2d 352 (Fla. 1958), and may occur a matter of moments before the murderous act, even after a battery has begun. Buford v. State, 403 So.2d 943 (Fla. 1981).

In this case, aside from the evidence concerning the numerous threats by the petitioner to the victim's girlfriend, testimony of the medical examiner who performed the autopsy revealed that the victim was shot five times. The evidence established that the petitioner had to reload the gun after she fired five shots (T.533), and used a lethal type of hollow-point bullet. Moreover, the evidence further revealed that the petitioner coldly appeared at the bottom of the stairwell, lifted her gun, said nothing, and began firing at the victim at close range. When the victim attempted to flee, the petitioner followed him, and then fired one more shot to the victim's head. In Florida, the fact that the assailant did not speak is probative that the assailant intended to shoot to kill. See Mitchell v. State, 734 So.2d 450, 452 (Fla. 4 DCA 1999). Under these circumstances, it is apparent that the "heat of passion" defense the petitioner now proposes was not available to her. See Demurjian v. State, 557 So.2d 642, 644 (Fla. 4 DCA 1990)(multiple stab wounds warranted inference of premeditation, so

30

absence of "heat of passion" argument not error). Consequently, the petitioner cannot establish prejudice arising from counsel's failure to call these witnesses in support of such a defense.

To the extent the petitioner means to argue that counsel should have called these witnesses to support the lack of premeditation defense ultimately presented at trial, that claim also fails. At trial, the defense argued that the petitioner lacked the proper premeditation as she had gone to the victim's apartment to commit suicide. Although the jury was also instructed on the lesser-included offenses of second degree murder, and manslaughter, it chose to convict the petitioner of first-degree murder. Even if the witnesses had been called to testify as proffered, no showing has been made in this habeas proceeding that their testimonies would have affected the guilt phase portion of the trial given the sufficient evidence adduced at trial to support the petitioner's conviction.

Consequently, the rejection of this claim in the Rule 3.850 proceeding, which decision was affirmed on appeal, was neither contrary to nor an unreasonable application of federal constitutional principles and therefore should not be disturbed here. Williams v. Taylor, supra.

In **claim seven,** the petitioner asserts that she was denied effective assistance of counsel, where her lawyer failed to conduct adequate pretrial investigation and conceded the petitioner's guilt at trial. (DE#6:14).

The law is clear that conceding a client's guilt can be a reasonable trial strategy. See Florida v. Nixon, 543 U.S. 175 (2004). When counsel's strategy, given the evidence bearing on the defendant's guilt, is in his client's best interest and when the

Strickland standard is satisfied, no tenable claim of ineffective assistance remains even where a defendant did not expressly consent to the strategy. Id.

Review of the trial court proceedings in its entirety reveals that defense counsel presented the best possible defense under the circumstances of this case by conceding that the petitioner killed the victim but lacked premeditation, and at best was only guilty of manslaughter. (T.598). Counsel focused on the fact that the petitioner never shot the victim's girlfriend, who was present, and stressed the fact that, given the petitioner's hysteria, and the fact that she intended to commit suicide on the day of the killing after the father of her unborn child abandoned her for another woman, she never had the conscious decision to kill him. (Id.:645-646).

Thus, as properly found by the state courts during the postconviction proceedings, the now-challenged remarks and actions of trial counsel did not constitute an improper concession of guilt as to the offense, but was reasonable comments based upon the evidence. While some of the comments uttered by counsel during his extensive remarks to the jury could possibly be viewed as inartfully made, when viewing these remarks in the context of the entire trial, such statements clearly did not result in an improper concession.

Further, to suggest to the jury that she did not shoot and kill the victim would have been totally contrary to the overwhelming evidence at trial, which included the testimony of an eyewitness, and the evidence recovered at the scene. By conceding that the petitioner shot the victim, defense counsel was able to achieve credibility with the jury, and question other evidence presented by the state regarding the petitioner's premeditation to

commit the offense. See Harich v. Dugger, 844 F.2d 1464, 1470 (11 Cir. 1988)(stating that competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury), cert. denied, 489 U.S. 1071 (1989), overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1482 (11 Cir. 1997).

In sum, after review of the record as a whole, it is apparent that the petitioner was not denied a fair trial. The result of the trial was not fundamentally unfair or unreliable, as the petitioner maintains. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Stated differently, defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing. United States v. Cronic, 466 U.S. at 659. Thus, the petitioner has failed to satisfy either the deficiency or prejudice prongs required by Strickland. The rejection of this claim in the state court proceedings should therefore not be disturbed here.

The fact that the jury rejected the defense presented with regard to the commission of the offense does not indicate that trial counsel rendered ineffective assistance of counsel. As was the prerogative of the jury, it chose to believe the strong evidence admitted by the state and the testimony of the state witnesses. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987). Thus, the trial court's determination that the petitioner was not entitled to postconviction relief on her claim of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362

(2000).

In **claim eight**, the petitioner asserts that the court erred in failing to ascertain the petitioner's desire to testify on her own behalf and call witnesses. (DE#6:16). According to the petitioner, counsel prevented her from testifying.

It is well settled that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel.   Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). Thus, every criminal defendant is privileged to testify in her own defense, or refuse to do so. Faretta v. California, 422 U.S. 806, 834 n. 45 (1975), quoting, Harris v. New York, 401 U.S. 222, 225 (1971). The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. Teague, 953 at 1533; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). The proper vehicle for an argument that a defendant's right to testify was violated by her trial counsel is a claim of ineffective assistance of counsel, which requires analysis under   Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

As long as an attorney advises a petitioner of her right to testify and does not prevent a petitioner from testifying, her strategic decision not to call petitioner as a witness is entitled to great deference. See Gallego v. United States, 174 F.3d 1196,

1197 (11 Cir. 1999)(noting that ineffective assistance of counsel occurs when "counsel refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify").

Review of the record indicates that after the state had rested and after the petitioner's motion for judgment of acquittal was denied, the trial court conducted a colloquy on the record, advising the petitioner of her constitutional right to testify on her own behalf. (T.581). In response to the court's inquiry, the petitioner acknowledged that she had a right to testify on her own behalf, but that she was waiving the right. (Id.).

Moreover, at the Rule 3.850 hearing, where the identical claim was raised, defense counsel testified that he discussed with the petitioner whether or not she should testify and the benefits to be had therefrom. (DE#15:Ex.I:30-31). Counsel reviewed his notes in this regard, and recalled that during a pretrial meeting, he asked the petitioner why she reloaded the gun, and the petitioner responded that she did so because she wanted to kill the victim, and wanted to make sure he was dead, so she shot him one more time. (Id.). Counsel recalled that based on the petitioner's explanation, he opined it would not be in her best interest to testify, but advised her that ultimately it was her decision whether or not she wanted to testify on her own behalf. (Id.:31). After the prosecution rested, counsel also recalled speaking with the petitioner to ascertain whether she wanted to testify, however, at that time, the petitioner again confirmed that she did not want to be subjected to cross-examination and therefore agreed with counsel's advice not to testify. (Id.:32).

Clearly, after being fully advised of her right to testify, the petitioner affirmatively stated on the record that she had

35

elected not to testify at trial. This demonstrates her ultimate accord with the defense strategy. Moreover, such advice of counsel was clearly reasonable under the circumstances, amounting to proper trial strategy, given the fact that the petitioner's credibility certainly would have been subject to attack by the prosecution. See Strickland, 466 U.S. at 689-91; United States v. Costa, 691 F.2d 1358, 1364 (11 Cir. 1982). It further appears that counsel's decision against calling any witnesses may have been a strategic decision so that the defense would be afforded both the first and last closing arguments to the jury. This Court must be highly deferential to such strategic decisions of counsel, which decision was reasonable under the circumstances of this case, not amounting to constitutionally ineffective representation. See Kelley v. Secretary for Dept. of Corrections, 377 F.3d 1317, 1353 (11 Cir. 2004).

Even if this Court were to find that counsel's advice to the petitioner regarding her right to testify was in someway deficient, the petitioner has not been prejudiced by the alleged deficient performance of counsel. As stated previously in this Report, counsel provided a thorough, strong cross-examination of the state witnesses and gave an impassioned closing argument. In light of the strong evidence admitted at trial, there is no reasonable probability that the result of the proceeding would have been different had the petitioner testified. Counsel's performance was not constitutionally ineffective, as alleged. See Strickland, supra.

Lastly, to the extent the petitioner appears to argue that she is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary

36

hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 7th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Nanci Rivero, <u>Pro Se</u>
     DC#163205
     Broward Correctional Institution
     20421 Sheridan Street
     Fort Lauderdale, FL 33332

     Nikole Hiciano, Ass't Atty Gen'l
     Office of the Attorney General
     Department of Legal Affairs
     444 Brickell Avenue, Suite 650
     Miami, FL 33131